IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GOOLSBY,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>M. CARRASCO, et al.,<br><br>　　　　Defendants.<br>_____ / | Case No. 1:09-cv-01650 JLT (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. 22) |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's claim that Defendant Gonzales failed to provide him adequate out-of-cell exercise time and facilities in violation of the Eighth Amendment. Pending before the Court is Plaintiff's motion for partial summary judgment on the issue of the adequacy of Plaintiff's out-of-cell exercise time. Defendant Gonzales has filed an opposition to the motion, and Plaintiff has filed a reply. For the reasons discussed below, the Court **DENIES** the pending motion.

**I.    BACKGROUND**

Plaintiff is a state prisoner incarcerated at California Correctional Institution ("CCI"). On September 17, 2009, Plaintiff filed a complaint and initiated this civil rights action. (Doc. 1.) In his complaint, Plaintiff claims that Defendants Gonzales, Carrasco, Schulteis, Gifford, Holland, Mayo, Rousta, and Grannis deprived him of adequate out-of-cell exercise time and facilities in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Id. at 4-7.)

1

Specifically, Plaintiff alleges that he was provided, on average, only 143 minutes of out-of-cell exercise time every thirteen days and was confined during those periods to a 150 square-foot exercise cage. (Id. at 4-6.) According to Plaintiff, inmates confined at California State Prison – Corcoran receive 120 minutes of out-cell-exercise every other day and inmates confined at Pelican Bay State Prison receive 60 minutes of out-of-cell exercise every day. (Id. at 7.) Plaintiff alleges that as a result of his deficient exercise time and CCI's inadequate exercise facilities, he suffers from muscle atrophy, headaches, cardiovascular difficulties, and psychological injuries. (Id. at 4.)

On December 3, 2009, the Court screened the complaint pursuant to 28 U.S.C. § 1915A and found that it states only a cognizable Eighth Amendment claim against Defendant Gonzales regarding the prison's outdoor exercise policy. (Doc. 7.) The Court therefore ordered Plaintiff to either file an amended complaint curing the deficiencies identified by the Court regarding his equal protection claim or notify the Court that he wishes to proceed only on his Eighth Amendment claim against Defendant Gonzales. (Id.) On December 17, 2009, Plaintiff notified the Court that he wished to proceed only on his Eighth Amendment claim against Defendant Gonzales. (Doc. 8.)

On December 30, 2009, Plaintiff filed a motion for partial summary judgment. (Doc 9.) That motion, however, was denied without prejudice, because Defendant Gonzales had yet to be served with the operative complaint. (Doc. 10.) Service of the complaint was subsequently effectuated on Defendant Gonzales, who, in turn, filed his answer and appeared in this action on March 29, 2010. (Doc. 17.) Discovery ensued, and on April 20, 2010, Plaintiff filed the pending motion for partial summary judgment. (Doc. 22.) Defendant Gonzales filed an opposition to the motion on July 20, 2010, and Plaintiff filed a reply on August 3, 2010. (Docs. 31 & 32.)

**II.     LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citation omitted).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. Stefanchik, 559 F.3d at 929. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**III.   EVIDENTIARY OBJECTIONS**

Plaintiff supports his motion for partial summary judgment with the following evidence: yard logs; Plaintiff's inmate appeals; declarations by inmates Manuel Castanon, Arellano Everardo, and Michael Biondino; Plaintiff's classification chronos; a copy of California Code of Regulations, Title 15, Section 3343(h); and a declaration by Plaintiff. Defendant raises several objections in his opposition to the majority of this evidence. The Court addresses each objection below.

### A.   Local Rule 260(a)

As an initial matter, Defendant argues that Plaintiff's motion for partial summary judgment is procedurally flawed because the motion does not contain a separate statement of undisputed facts as required by Local Rule 260(a). (Doc. 31 at 7.) Plaintiff, however, has included such a statement in his motion. (See Doc. 22 at 4-6.) In fact, Defendant references and responds to Plaintiff's statement of undisputed facts elsewhere in his opposition. (See Doc. 31-1 at 1-6.) Defendant's argument regarding this matter therefore lacks merit.

### B.   Yard Logs

Plaintiff attaches to the pending motion several yard logs authored and signed by him. (Doc. 22, Ex. A.) Plaintiff explains that each time he was permitted to utilize the outdoor exercise yard, he recorded the time he left and returned to his cell in the log. (Doc. 32 at 6.) Plaintiff offers these logs as evidence that he never received five or more hours of yard time in any given week. (See Doc. 22 at 10.) Defendant, however, objects to the yard logs, arguing that the logs constitute inadmissible hearsay which must be excluded under Federal Rules of Evidence 801 and 802. (Doc. 31 at 7-8.)

On summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Block v. City of L.A., 253 F.3d 410, 419 (9th Cir. 2001) (citing Celotex Corp, 477 U.S. at 324). Rule 56 explicitly permits a party to support a motion for summary judgment with declarations, so long as they set forth facts based upon personal knowledge. Fed. R. Civ. P. 56(c)(1) & (4). Here, Plaintiff's logs chronicling his outdoor yard times are based upon his first-hand knowledge, not hearsay. As mentioned above, Plaintiff asserts that each time he was permitted to use the outdoor exercise yard, he recorded the time he left and returned to his cell in the log.[1] Defendant's objection to Plaintiff's yard

---

[1] Plaintiff signed the yard logs, but not under the explicit penalty of perjury as required by 28 U.S.C. § 1746. Nevertheless, Defendant did not object to the yard logs on this ground. Thus, for the purposes of this motion, the Court treats the signed yard logs as the equivalent of a properly sworn declaration. Moreover, as this Court recently stated in Clark v. County of Tulare, 2010 U.S. Dist. LEXIS 121537 (E.D. Cal. Nov. 17, 2010), "At the summary judgment stage, courts focus on admissibility of the evidence's content, not its form. Celotex Corp. v. Catrett, 477 U.S. at 324, 106 S.Ct. At 2553 (opposing party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment") . . . A party must show that the evidence could be rendered in an admissible form at trial. Celotex, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265, decision after remand, Catrett v. Johns-Manville Sales Corp. 826 F.2d 33, 37, 263 U.S. App. D.C. 399 (D.C. Cir. 1987). Thus, the substance of the evidence must be admissible, but the form of the evidence does not." Clearly, at trial, this evidence could be presented properly through Plaintiff's own testimony.

4

logs is therefore **OVERRULED**.

### C. Declarations of Manuel Castanon, Arellano Everardo, and Michael Biondino,

Plaintiff supports his motion for partial summary judgment with the declarations of three other inmates confined at CCI. (Doc. 22, Exs. D-F.) The three inmates assert in their respective declarations that they receive substantially less than five hours of yard time in any given week. (See id.) Defendant, meanwhile, argues that these declarations should be excluded as evidence because they constitute inadmissible hearsay and are irrelevant.[2] (Doc. 31 at 8.)

Defendant's hearsay objections to these declarations, like his hearsay objection to the yard logs, are fundamentally flawed. The substance of the declarations – statements by the declarant regarding the frequency of yard time he typically receives – is based upon the personal knowledge of the declarant and is therefore properly before the Court on a motion for summary judgment. Fed. R. Civ. P. 56(c)(1) & (4). Accordingly, Defendant's hearsay objections to the declarations of Manuel Castanon, Arellano Everardo, and Michael Biondino are **OVERRULED.**

The declarations are also relevant. Although they do not establish Plaintiff's actual outdoor exercise times, the declarations corroborate Plaintiff's allegation that inmates confined at CCI were not provided at least five hours of yard time in any given week. In other words, the declarations tend to make it "more probable" that Plaintiff was deprived of outdoor exercise time for extended periods of time, a fact that is "of consequence to the determination of [this] action." Fed. R. Evid. 401. Defendant's objections to the declarations of Manuel Castanon, Arellano Everardo, and Michael Biondino on the basis of relevance are therefore **OVERRULED**.

### D. Declaration of Plaintiff

Plaintiff attaches his own declaration to the pending motion for partial summary judgment, wherein he avers, among other things, that he was confined in the Security Housing Unit ("SHU") at CCI for 15.5 months; during that time he received, on average, only 143 minutes of yard time every 13 days; the individual exercise yard for the SHU consists of a 150 foot wire-mesh cage with a toilet and sink;

---

[2] Defendant cites Federal Rule of Evidence 403(b). Rule 403, however, does not have a subsection (b). Moreover, Rule 403 pertains to evidence that is *relevant* but is nevertheless excluded due to its prejudicial or cumulative nature. To the extent that Defendant seeks to exclude evidence that is *irrelevant*, the proper authority is found in Federal Rules of Evidence 401 and 402.

1  he never refused an opportunity to utilize the exercise yard; and access to the yard was important to his
2  mental and physical health. (Doc. 22, Ex. I.) Defendant, on the other hand, vaguely counters that the
3  Court "should not consider Plaintiff's declaration in evaluating a dispute as to a material fact because
4  it is self-serving." (Doc. 31 at 8.)

Declarations are "oftentimes . . . 'self serving' – '[a]nd properly so, because otherwise there would be no point in a party submitting them.'" SEC v. Phan, 500 F.3d 895, 909 (9th Cir. 2007) (quoting United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999)). "Only in certain instances – such as when a declaration states only conclusions and not such facts as would be admissible in evidence – can a court disregard a self serving declaration for purposes of summary judgment." Phan, 500 F.3d at 909 (citation and internal quotation marks omitted). This is not the case here. Plaintiff's declaration sets forth specific facts based upon his personal knowledge. Such information is properly before the Court on a motion for summary judgment. See Fed. R. Civ. P. 56(c)(1) & (4). Moreover, Plaintiff's assertion that he received less than five hours of yard access a week is corroborated, to some extent, by the declarations of Manuel Castanon, Arellano Everardo, and Michael Biondino. Cf. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1059 n.5 & 1061 (9th Cir. 2002) (noting that uncorroborated, self-serving declaration insufficient to raise a genuine dispute of material fact on a motion for summary judgment). Accordingly, Defendant's vague objection to Plaintiff's declaration based upon its self-serving nature is **OVERRULED**.

## IV.  UNDISPUTED FACTS

Upon review of the evidence submitted by the parties in connection with the pending motion, the Court deems the following facts undisputed:

1. On January 30, 2008, Plaintiff was transferred due to his disciplinary history from administrative segregation at Richard J. Donovan Correctional Facility ("RJD") to the SHU at CCI. (Doc. 22, Ex. G.)

2. Plaintiff was confined as a Level IV inmate in the SHU at CCI from January 30, 2008 to May 23, 2008. (Doc. 31-1, Def.' Undisputed Facts ("DUF") #3.)

3. From May 23, 2008 to February 10, 2009, Plaintiff was housed at the San Diego County Jail for court appearances unrelated to this lawsuit. (Doc. 22, Ex. G.)

6

4.  Plaintiff returned to the SHU at CCI on February 11, 2009, where he remained confined until at least January 20, 2010.  (Doc. 22, Ex. G; Doc. 31-2, Ex. 5.)

5.  In total, Plaintiff was confined in the SHU at CCI for approximately fifteen and one half months.  (Doc. 22, Pl's Undisputed Facts ("PUF") #1.)

6.  The SHU provides the maximum security for inmates whose conduct endangers the safety of others or the security of the institution; the SHU is considered a "prison within a prison" where inmates serve time for serous offenses committed while in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  (Doc. 31-1, Def.'s Undisputed Facts ("DUF") #2.)

7.  Pursuant to California Code of Regulations, Title 15, Section 3343(h), inmates in segregated housing such as the SHU are to be provided a minimum of one hour per day, five days a week, of out-of-cell exercise unless security and safety considerations preclude such activity.  (Doc. 31-1, DUF #1.)

8.  Due to Plaintiff's classification, his out-of-cell exercise in the SHU was limited to the Individual Exercise Yard ("IEM"), which consisted of individualized, isolated exercise cages that were reserved for high risk inmates.  (Doc. 22, Ex. G; Doc. 31-2, Ex. 5.)

9.  On March 26, 2008, Plaintiff filed an inmate appeal complaining that he was receiving out-of-cell exercise access only one day a week for two hours.  Plaintiff's appeal was denied at the first level of review, wherein prison officials explained that yard time had been curtailed because CCI was under institutional lockdown and due to the inclement weather.  (Doc. 22, Ex. B.)

10. On April 29, 2009, Plaintiff filed another inmate appeal complaining that he was receiving only two and a half hours of out-of-cell exercise once a week.  Plaintiff's appeal was denied at the second level of review, wherein prison officials noted that every effort was being made to afford adequate exercise time for inmates requiring IEM access.  However, at that time, the institution was experiencing difficulties in accommodating all the inmates on IEM status.  (Doc. 22, Ex. C.)

///

## V. DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Prison officials therefore have a constitutional "duty to ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted); see Kennan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).

To establish a violation of this duty, a prisoner must satisfy both an objective and subjective requirement. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a prisoner must demonstrate an objectively serious deprivation, one that amounts to a denial of "the minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In determining whether a deprivation is sufficiently serious, "the circumstances, nature, and duration" of the deprivation must be considered. Johnson, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982). Second, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind, one of "deliberate indifference." Wilson, 501 U.S. at 303; Johnson, 217 F.3d at 733. In this regard, a prison official is liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Nonetheless, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

### A. Objective Requirement

Plaintiff contends that he was deprived of adequate out-of-cell exercise time. (Doc. 22 at 7.) Plaintiff cites California Code of Regulations, Title 15, Section 3343(h) and the Ninth Circuit's decision in Spain v. Procunier, 600 F.2d 189 (9th Cir. 1979) for the proposition that the Eighth Amendment requires all inmates to be provided at least five hours of out-of-cell exercise per week. (Id. at 8.) As evidence that he was afforded less than this, Plaintiff offers yard logs chronicling the amount of yard time he was provided from March 19, 2009 to December 7, 2009. (Id., Ex. A.) Moreover, Plaintiff presents declarations from three other inmates confined at CCI affirming that they too receive far less

8

than five hours of out-of-cell exercise per week.  (Id., Exs. D-F.)

It is well-established that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of . . . inmates."  Spain, 600 F.2d at 199.  Thus, complete denials of outdoor exercise for extended periods of time constitute objectively serious deprivations in violation of the Eighth Amendment.  See Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (complete denial of outdoor exercise for six and a half weeks satisfies the Eighth Amendment's objective requirement); Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (complete denial of outdoor exercise for a period of over one year "raised a substantial constitutional question"); Spain, 600 F.2d 189, 199 (complete denial of outdoor exercise for four years constitutes a serious deprivation under the Eighth Amendment).

However, with respect to claims challenging the frequency or duration of an inmate's outdoor access, "the Ninth Circuit has not identified a specific minimum amount of weekly exercise that must be afforded" under the Eighth Amendment.  Jayne v. Bosenko, No. 2:08-cv-2767-MSB, 2009 WL 4281995, at *8 (E.D. Cal. Nov. 23, 2009) (citation omitted).  Contrary to Plaintiff's assertion, the Ninth Circuit in Spain did not establish a constitutional floor of five hours of outdoor exercise per week for all inmates.  Rather, the Ninth Circuit in Spain held that the district court's order mandating such, given the unique circumstances presented by that case, adequately satisfied the demands of the Eighth Amendment.  In doing so, the Ninth Circuit, like other circuits confronting this issue, stopped far-short of establishing any specific weekly exercise minimum.  See Rodgers v. Jabe, 43 F.3d 1082, 1087 (6th Cir. 1995) ("Although [the Sixth Circuit has] referred to the one hour per day, five days a week mandate in Spain, [the Sixth Circuit has] stopped far short of endorsing that amount, or indeed *any* amount, as a constitutional requirement.") (emphasis in original).  Thus, while Plaintiff has demonstrated through his evidence that he was not afforded five hours of outdoor exercise per week, that does not establish, in of itself, that Plaintiff suffered an objectively serious deprivation within the meaning of the Eighth Amendment.

Whether an inmate's claim regarding the frequency or duration of his outdoor exercise arises to the level of an objectively serious deprivation "depend[s] on the circumstances of each case."  Perkins v. Kansas Dep't of Corrections, 165, F.3d 803, 810 n.8 (10th Cir. 1999).  Indeed, the determination as

to whether an inmate was afforded constitutionally sufficient exercise is highly "fact-specific" and requires consideration of a multitude of factors. See Davenport v. De Robertis, 844 F.2d 1310, 1315 (7th Cir. 1988). In addition to the frequency and duration of outdoor exercise afforded to the inmate, the court should consider: "(1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (citations omitted) (forty-five minutes of out-of-cell exercise per week did not violate Eight Amendment where the inmate had thirty minutes a week to shower, opportunities to leave his cell for personal telephone calls, and was allowed to receive visitors). Cf. Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994) (forty-minutes of outdoor exercise a week was constitutionally insufficient, especially in light of the fact that plaintiff's confinement in the SHU was "indefinite and therefore potentially long-term").

In this case, it is undisputed that Plaintiff was confined in the SHU at CCI for well over a year and therefore endured the alleged unconstitutional condition of confinement for an extended period of time. (Doc. 22, PUF #1.) Plaintiff also asserts in his complaint that his cell was merely 96 square-feet and that out-of-cell yard time was his only opportunity for social interaction in an otherwise solitary living state. (Doc. 1 at 4, 6.) However, of key importance, Plaintiff has failed to establish exactly how much out-of-cell exercise time he was provided on average at CCI. In his complaint and pending motion, Plaintiff asserts that he was afforded only 143 minutes every thirteen days, which equates to 77 minutes a week. (Doc. 1 at 4; Doc. 22 at 10, Ex. I.) In contrast, Plaintiff's yard logs from March 19, 2009 through December 7, 2009 reveal that Plaintiff was provided, on average, over 102 minutes per week.[3] (Doc. 22, Ex. A.) Furthermore, in Plaintiff's inmate grievance, dated April 29, 2009, he reports that the inmates were receiving 150 minutes a week. (Id., Ex. C "602 Supplement".)

The declarations of Manuel Castanon, Arellano Everardo, and Michael Biondino fail to clarify the record in this regard. Although relevant, the declarations of these inmates do not affirmatively establish how much exercise Plaintiff was afforded. Inmate Castanon asserts that he has been confined

---

[3] Plaintiff's yard logs cover his out-of-cell exercise times from March 19, 2009 through December 7, 2009, a span of 264 days. During that time frame, Plaintiff recorded 3,869 minutes of yard time, mostly in the form of two hour blocks every seven to ten days. The raw average derived from those numbers is 102.59 minutes per week (3,869 minutes / 264 days X 7 days/week).

10

1 in the SHU at CCI since 2008 and has only been provided on average six hours of yard time a month.
2 (Doc. 22, Ex. D.) Inmate Everardo declares that he has been confined at CCI since March 3, 2009 and
3 receives only two and a half hours of exercise every ten to seventeen days. (Id., Ex. E.) Inmate
4 Biondino states that he has been confined at CCI for approximately nine months and receives about two
5 and a half hours of exercise every two weeks. (Id., Ex. F.) The vagueness and variance between the
6 ranges provided by the inmates demonstrate the inappropriateness of any attempt by the Court to
7 extrapolate Plaintiff's own yard times from these declarations.

8        The factual inconsistencies regarding Plaintiff's weekly outdoor exercise times are material to
9 this action. In Pierce v. County of Orange, 526 F.3d 1190 (9th Cir. 2008), the Ninth Circuit was
10 confronted with a similar outdoor exercise claim involving pretrial detainees confined in Orange
11 County.[4] The pretrial detainees, like Plaintiff, were confined in their cells for twenty-two hours or more
12 each day, and the average duration of pretrial detention typically lasted anywhere from 110 to 312 days.
13 See id. at 1212. Under these circumstances, the Ninth Circuit held that 90 minutes of weekly outdoor
14 exercise "[did] not give meaningful protection to this basic human necessity" and therefore constituted
15 a violation of the Eighth Amendment. Id. As a remedy, the Ninth Circuit upheld the lower court's order
16 which required inmates to be permitted exercise "at least twice each week for a total of not less than 2
17 hours per week[.]" Id. at 1213. The Ninth Circuit found the remedy to be "narrowly drawn" and
18 sufficient under those circumstances to correct the constitutional violation. Id.

19        Applying the general parameters provided by the Ninth Circuit in Pierce to this case, the Court
20 is at a complete loss as to which of Plaintiff's weekly averages to use for comparison. If the Court relied
21 on the assertions in Plaintiff's complaint and pending motion, the Court would be inclined to conclude,
22 consistent with Pierce, that 77 minutes of outdoor exercise per week is insufficient under the Eighth
23 Amendment. If, however, the Court relied on the yard logs which Plaintiff himself provides as evidence,
24 the Court would hesitate to find that 102 minutes of out-of-cell yard time per week is an objectively
25 serious deprivation. Finally, were the Court to rely on Plaintiff's inmate appeal, the Court would be

---

[4] Claims by pretrial detainees arise under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Nonetheless, because the rights of pretrial detainees under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards are applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

reluctant to find that 150 minutes of outdoor exercise per week constitutes a deprivation of "the minimal civilized measures of life's necessities." Rhodes, 452 U.S. at 346.

The Court does not mean to suggest that Plaintiff must provide evidence based upon mathematical precision as to the amount of exercise time he was afforded per week in order to ultimately prevail on the merits of his claim. That would belittle the seriousness of his allegations, as well as the protection afforded under the Eighth Amendment. However, by failing to provide the Court with a specific calculation supported by the evidence, Plaintiff has failed to meet his initial burden on summary judgment of demonstrating the absence of a genuine issue of material fact.

### B.   Subjective Requirement

Even assuming Plaintiff met his initial burden and satisfied the objective component of his Eighth Amendment claim, Plaintiff must still demonstrate, beyond controversy, that Defendant acted with deliberate indifference to prevail on summary judgment. "Showing 'deliberate indifference' involves a two-part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). First, the inmate must show that the prison official was aware of a "substantial risk of serious harm" to the inmate's health or safety. Id. (citing Farmer, 511 U.S. at 837). Second, the inmate must show that the prison official had no "reasonable"' justification for the alleged deprivation. Id.

Plaintiff has established that Defendant was aware of the limitations on Plaintiff's out-of-cell exercise and the risks it posed to Plaintiff's health. Plaintiff submitted several inmate appeals to prison officials regarding the inadequacy of his out-of-cell exercise. (Doc. 22, Exs. B & C.) On each occasion, prison officials, including those directly below Defendant, responded that they were well-aware of the situation, but for various reasons, would not provide Plaintiff with more frequent yard access. (See id., Exs. B & C.) Prison officials also assured Plaintiff that additional IEM modules had been ordered and would possibly be installed in the near future. (Id., Ex. C.) Under these circumstances, the Court finds it difficult to believe that Defendant was ignorant of such a longstanding, pervasive, and well-documented issue. See Thomas, 611 F.3d at 1152 ("[A] prison warden is deemed to have the general knowledge that is expected, at a minimum, of an individual performing the functions of that job."). Furthermore, because the Ninth Circuit has stressed for over thirty years that regular outdoor exercise is extremely important to the well-being of inmates, see Spain, 600 F.2d at 199, the Court concludes that

it was obvious to Defendant that the alleged deprivations in out-of-cell exercise posed a substantial risk to Plaintiff's health.  See Thomas, 611 F.3d at 1152.

As to whether Defendant had a reasonable justification for limiting Plaintiff's out-of-cell exercise, Plaintiff argues that "the reality of the situation is that . . . Defendant Gonzales [simply] refuses to allocate funds to build enough module (cages) to give inmates on IEM there [sic] constitutional minimums."  (Doc. 32 at 8.)  Plaintiff dismisses any notion that security or safety concerns necessitated restrictions on yard access, especially since IEM cages, in Plaintiff's view, eliminated any risk of danger to inmates and staff.  (Id. at 8.)  Moreover, Plaintiff contends that the SHU is a super-max facility already subject to the strictest security measures.  (Id. at 3.)

Defendant counters and provides evidence that on three occasions, the security and safety of the institution required the modification of Plaintiff's out-of-cell exercise privileges.[5]  (Doc. 31 at 11.)  First, from January 25, 2008 to March 19, 2008, Plaintiff's SHU unit was placed on program modification due to an attempted murder.  (Doc. 31-2, Ex. 1.)  Second, from April 3, 2008 to March 3, 2009, Plaintiff's SHU unit was placed on program modification due to another attempted murder.  (Id.)  Third, from May 12, 2009 to May 28, 2009, Plaintiff's SHU unit was placed on program modification due to the possession of a weapon by an inmate and a death.  (Id., Ex. 2.)  According to Defendant, Plaintiff was deprived of a total of 148 days of out-of-cell exercise due to prison lockdowns.

The Ninth Circuit has made clear that "prison officials have a right and a duty to take the necessary steps to reestablish order in a prison when such order is lost."  Norwood v. Vance, 591 F.3d 1062, 1069 (9th Cir. 2010) (quoting Hoptowit, 682 F.2d at 1259).  When a prison lockdown is initiated in response to a genuine security or safety emergency, prison officials may temporarily curtail inmates' outdoor exercise access without running afoul of the Eighth Amendment.  See Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980); Spain, 600 F.2d at 199 (regular outdoor exercise must be provided "unless inclement weather, unusual circumstances, or disciplinary needs ma[k]e that impossible").  "Such decisions are not to be judged with the benefit of hindsight . . . but whether prison officials reasonably believed they would be effective in stopping . . . violence."  Norwood, 591 F.3d at 1069.

---

[5] Defendant does not clearly explain what is meant by program "modification."  It appears to mean the complete or near complete curtailment of inmate exercise privileges due to a housing unit's lockdown status.

Prison officials are to be afforded "wide-ranging deference" regarding these matters. Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Accordingly, drawing all inferences from the evidence presented in favor of the non-moving party, the Court finds that there is a genuine dispute of material fact as to whether the prison lockdowns constituted reasonable justification for depriving Plaintiff of out-of-cell exercise from January 25, 2008 to March 19, 2008; from April 3, 2008 to May 28, 2008; and from May 12, 2009 to May 28, 2009. The precise circumstances surrounding these lockdowns and whether the restrictions on out-of-cell exercise bore a reasonable relationship to legitimate attempts at easing security emergencies are issues to be resolved by the factfinder.

Defendant's remaining justifications for curtailing Plaintiff's out-of-cell exercise are far less persuasive. Defendant argues that Plaintiff's own disciplinary history required his assignment to the SHU and to IEM status, thereby exposing him to potential exercise restrictions. (Doc. 31 at 12.) Of particular concern to Defendant, is Plaintiff's past rules violations involving violence, including an attempted battery on a peace officer and several incidents of battery on other inmates. (Doc. 31-2, Ex. 5.) However, the Court cannot accept the sweeping proposition that Plaintiff's assignment to the SHU and to IEM status, in of itself, justifies a long-term deprivation of out-of-cell exercise. Plaintiff's Eighth Amendment right to adequate outdoor exercise was not extinguished upon his entrance into segregated housing. See Spain, 600 F.2d at 199-200 (inmates in AC, a segregated housing unit, were entitled to regular outdoor exercise).

Nor was Plaintiff's disciplinary history analogous to that of the inmate in LeMaire v. Maass, 12 F.3d 1444 (9th Cir. 1993). In LeMaire, the Ninth Circuit reversed the district court's finding that the deprivation of outdoor exercise for most of a five-year period violated the Eighth Amendment. In reaching its decision, the Ninth Circuit emphasized that "[t]he record amply demonstrates that . . . [inmate] LeMaire is a violent and dangerous person with no regard for other human beings." Id. at 1449. Through his repeated acts of extreme violence against prison officials and other inmates alike, inmate LeMaire demonstrated that he "posed a grave security risk when outside his cell." Id. at 1458. Under those circumstances, the Ninth Circuit held that "as long as [an inmate] engages in violent and disruptive behavior, prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline[.]" Id. at 1458. That is not the case here. With the exception of

two rules violations, Plaintiff remained largely disciplinary free during his fifteen-month tenure in the SHU. (Doc. 31-2, Ex. 5.) Defendant has presented no evidence that Plaintiff posed such a "grave security risk" that officials were forced to curtail his out-of-cell exercise time in order to maintain prison order.  LeMaire, 12 F.3d at 1458.

Finally, the Court rejects any justification premised on the "reality" that "IEM programming requires extensive resources" which cannot always be afforded to inmates. (Doc. 31 at 12.) "The cost or inconvenience of providing adequate facilities is not a defense to the imposition of cruel and unusual punishment." Spain, 600 F.2d at 200. Although practical difficulties involved in administering a prison may *occasionally* justify the deprivation of outdoor exercise, the Ninth Circuit has rejected the argument that logistical problems can justify long-term, systemic deprivations of outdoor exercise. See Allen, 48 F.3d at 1088. Thus, while sympathetic to the issue of overcrowding and budgetary shortfalls currently faced by the prison system, the Court cannot accept such as a legitimate excuse for depriving Plaintiff of adequate outdoor exercise for over fifteen months.

**VI.    CONCLUSION**

Plaintiff has failed to meet his burden to demonstrate the absence of a genuine issue of material fact. Moreover, Defendant has demonstrated with affirmative evidence that there is a genuine dispute as to whether security lockdowns justified deprivations in Plaintiff's out-of-cell exercise from January 25, 2008 to March 19, 2008; from April 3, 2008 to May 28, 2008; and from May 12, 2009 to May 28, 2009. Accordingly, it is **HEREBY ORDERED** that Plaintiff's April 20, 2010, motion for partial summary judgment (Doc. 22) is **DENIED**.

IT IS SO ORDERED.

Dated:    **February 3, 2011**                              /s/ Jennifer L. Thurston
                                                            UNITED STATES MAGISTRATE JUDGE