1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | THOMAS GOOLSBY,                      )   CASE NO. 1:09-cv-01650 JLT (PC)
                                          )
12 |              Plaintiff,              )   AMENDED PRETRIAL ORDER
                                          )
13 |        v.                            )   Deadlines:
                                          )   Motions in Limine Filing:     10/24/11
14 | M. CARRASCO, et al.,                 )
                                          )   Opposition to Motions in Limine:
15 |        Defendants.                    )                               11/7/11
   | _____      )
16 |                                          Trial Submissions:         10/31/11

17                                            Jury Trial:           11/21/11, 9 a.m.

18        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action

19 pursuant to 42 U.S.C. § 1983. Upon consideration of the parties' comments at hearing, the parties'

20 pretrial statements, and the file in this case, the Court issues the following pretrial order.

21 **A.      JURISDICTION / VENUE**

22        Plaintiff seeks relief under 42 U.S.C. § 1983.  The Court therefore has jurisdiction over this

23 matter pursuant to 28 U.S.C. §§ 1331 and 1343.  In addition, Plaintiff's claims arise out of events that

24 occurred at the California Correctional Institute in Tehachapi, California.  Accordingly, venue is proper

25 in the United States District Court for the Eastern District of California sitting in Fresno.  28 U.S.C.

26 § 1391.

27 **B.      JURY TRIAL**

28        Plaintiff included a demand for jury trial in his complaint.  Defendants also included a demand

1

1  for jury trial in their answer.  Accordingly, trial will be by jury.

2  **C.     UNDISPUTED FACTS**

3      1.     Because of his disciplinary history, Plaintiff Thomas Goolsby was transferred from

4  administrative segregation at Richard J. Donovan Correctional Facility (RJD) to the Secured Housing

5  Unit (SHU) at California Correctional Institution (CCI).

6      2.     Plaintiff is a Level IV inmate and was housed in the CCI SHU from January 30, 2008,

7  through May 23, 2008.

8      3.     From May 23 or 24, 2008 to February 10, 2009, Goolsby was housed in the San Diego

9  County Jail for court appearances unrelated to this lawsuit.

10      4.     In total, Goolsby was confined in the SHU at CCI for approximately fifteen and one half

11  months.

12      5.     The SHU provides the maximum security for inmates whose conduct endangers the safety

13  of others or the security of the Institution; the SHU is considered a "prison within a prison" where

14  inmates serve time for serious offenses committed while in the custody of the CDCR,

15      6.     Due to Goolsby's custody factors, including but not limited to his disciplinary history,

16  his out-of-cell exercise in the SHU was limited to the Individual Exercise Yard (IEM), which consisted

17  of individualized, isolated exercise cages that were reserved for high risk inmates requiring isolated

18  programming.

19      6.     On March 26, 2008, Goolsby filed inmate appeal # CCI-0-08-00817 complaining that he

20  was receiving out-of-cell exercise access only one day a week for two hours. Goolsby's  appeal was

21  denied at the first level of review; prison officials explained that yard time had been curtailed for two

22  reasons: 1) CCI was under institutional lockdown; and 2) the inclement weather.

23      7.     On April 29, 2009, Goolsby filed inmate appeal # CCI-09-00757 complaining that he was

24  receiving only two and a half hours of out-of-cell exercise per week. Goolsby's appeal was denied at the

25  second level of review.

26      8.     Under Title 15 section 3335(a) of the California Code of Regulations, when an inmate's

27  presence in an institution's general inmate population presents an immediate threat to the safety of the

28  inmate or others, endangers institution security or jeopardizes the integrity of an investigation of alleged

serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.

9.     CCI SHU is a special purpose housing unit.

10.     Pursuant to California Code of Regulations, Title 15, section 3343(h), inmates assigned to special purpose segregation housing will be permitted a minimum of one hour per day, five days a week, of exercise outside their rooms or cells unless security and safety considerations preclude such activity.

11.     In the event that the safety and security of the institution is threatened, programming for inmates, including their out-of-cell exercise, can be limited or suspended, under Title 15 sections 3270, 3300, 3301, and 3343(h) of the California Code of Regulations.

**D.     DISPUTED FACTS**

All facts and circumstances, except for those specifically identified in the undisputed facts section above, are in dispute.

**E.     DISPUTED EVIDENTIARY ISSUES**

Although Defendants anticipate that Plaintiff may attempt to offer evidence not permitted by the Rules of Evidence, no specific evidentiary issues are known at this time.

**F.     SPECIAL FACTUAL INFORMATION**

None.

**G.     RELIEF SOUGHT**

In his complaint for damages, Plaintiff sought $10,000 in compensatory damages and punitive damages.  Without explanation, in his pretrial statement, Plaintiff seeks $50,000 in compensatory damages and $88,000 in punitive damages. Defendants will seek their costs if they prevail at trial.

**H.     POINTS OF LAW**

1.     Liability Under Section 1983

Under § 1983, Plaintiff is required to prove that each Defendant (1) acted under color of state law and (2) deprived him of rights secured by the Eighth Amendment of the United States Constitution. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  A plaintiff must prove that each

Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under section 1983, and the Defendant is only liable for his own misconduct. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009); see Monell v. Dept. of Social Services, 436 U.S. 658, 691-92 (1978).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Prison officials therefore have a constitutional "duty to ensure that prisoners are provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted); see Kennan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).

To establish a violation of this duty, a prisoner must satisfy both an objective and subjective requirement. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a prisoner must demonstrate an objectively serious deprivation, one that amounts to a denial of "the minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In determining whether a deprivation is sufficiently serious, "the circumstances, nature, and duration" of the deprivation must be considered. Johnson, 217 F.3d at 731. "The more basic the need, the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982). Second, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind, one of "deliberate indifference." Wilson, 501 U.S. at 303; Johnson, 217 F.3d at 733. In this regard, a prison official is liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Nonetheless, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

It is well-established that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of . . . inmates." Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Thus, complete denials of outdoor exercise for extended periods of time constitute objectively serious deprivations in violation of the Eighth Amendment. See Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (complete denial of outdoor exercise for six and a half weeks satisfies the Eighth

4

Amendment's objective requirement); <u>Toussaint v. Yockey</u>, 722 F.2d 1490, 1493 (9th Cir. 1984) (complete denial of outdoor exercise for a period of over one year "raised a substantial constitutional question"); <u>Spain</u>, 600 F.2d 189, 199 (complete denial of outdoor exercise for four years constitutes a serious deprivation under the Eighth Amendment).

However, with respect to claims challenging the frequency or duration of an inmate's outdoor access, "the Ninth Circuit has not identified a specific minimum amount of weekly exercise that must be afforded" under the Eighth Amendment. <u>Jayne v. Bosenko</u>, No. 2:08-cv-2767-MSB, 2009 WL 4281995, at *8 (E.D. Cal. Nov. 23, 2009) (citation omitted). The Ninth Circuit, like other circuits confronting this issue, has stopped far-short of establishing any specific weekly exercise minimum. <u>See</u> <u>Rodgers v. Jabe</u>, 43 F.3d 1082, 1087 (6th Cir. 1995) ("Although [the Sixth Circuit has] referred to the one hour per day, five days a week mandate in <u>Spain</u>, [the Sixth Circuit has] stopped far short of endorsing that amount, or indeed *any* amount, as a constitutional requirement.") (emphasis in original).

Whether an inmate's claim regarding the frequency or duration of his outdoor exercise arises to the level of an objectively serious deprivation "depend[s] on the circumstances of each case." <u>Perkins v. Kansas Dep't of Corrections</u>, 165, F.3d 803, 810 n.8 (10th Cir. 1999). Indeed, the determination as to whether an inmate was afforded constitutionally sufficient exercise is highly "fact-specific" and requires consideration of a multitude of factors. <u>See</u> <u>Davenport v. De Robertis</u>, 844 F.2d 1310, 1315 (7th Cir. 1988). In addition to the frequency and duration of outdoor exercise afforded to the inmate, the court should consider: "(1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." <u>Wishon v. Gammon</u>, 978 F.2d 446, 449 (8th Cir. 1992) (citations omitted) (forty-five minutes of out-of-cell exercise per week did not violate Eight Amendment where the inmate had thirty minutes a week to shower, opportunities to leave his cell for personal telephone calls, and was allowed to receive visitors). <u>Cf.</u> <u>Allen v. Sakai</u>, 48 F.3d 1082, 1088 (9th Cir. 1994) (forty-minutes of outdoor exercise a week was constitutionally insufficient, especially in light of the fact that plaintiff's confinement in the SHU was "indefinite and therefore potentially long-term").

In <u>Pierce v. County of Orange</u>, 526 F.3d 1190 (9th Cir. 2008), the Ninth Circuit was confronted

with a similar outdoor exercise claim involving pretrial detainees confined in Orange County.[1]   The pretrial detainees were confined in their cells for twenty-two hours or more each day, and the average duration of pretrial detention typically lasted anywhere from 110 to 312 days.  See id. at 1212.  Under these circumstances, the Ninth Circuit held that 90 minutes of weekly outdoor exercise "[did] not give meaningful protection to this basic human necessity" and therefore constituted a violation of the Eighth Amendment.  Id.  As a remedy, the Ninth Circuit upheld the lower court's order which required inmates to be permitted exercise "at least twice each week for a total of not less than 2 hours per week[.]"  Id. at 1213.  The Ninth Circuit found the remedy to be "narrowly drawn" and sufficient under those circumstances to correct the constitutional violation.  Id.

Plaintiff must also demonstrate that Defendant acted with deliberate indifference.  "Showing 'deliberate indifference' involves a two-part inquiry."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  First, the inmate must show that the prison official was aware of a "substantial risk of serious harm" to the inmate's health or safety.  Id. (citing Farmer, 511 U.S. at 837).  Second, the inmate must show that the prison official had no "reasonable'" justification for the alleged deprivation.  Id.

Toward this end, the Ninth Circuit has made clear that "prison officials have a right and a duty to take the necessary steps to reestablish order in a prison when such order is lost."  Norwood v. Vance, 591 F.3d 1062, 1069 (9th Cir. 2010) (quoting Hoptowit, 682 F.2d at 1259).  When a prison lockdown is initiated in response to a genuine security or safety emergency, prison officials may temporarily curtail inmates' outdoor exercise access without running afoul of the Eighth Amendment.  See Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980); Spain, 600 F.2d at 199 (regular outdoor exercise must be provided "unless inclement weather, unusual circumstances, or disciplinary needs ma[k]e that impossible").  "Such decisions are not to be judged with the benefit of hindsight . . . but whether prison officials reasonably believed they would be effective in stopping . . . violence."  Norwood, 591 F.3d at 1069.  Prison officials are to be afforded "wide-ranging deference" regarding these matters.  Id. (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

_____

[1]   Claims by pretrial detainees arise under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  Nonetheless, because the rights of pretrial detainees under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the same standards are applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

1    2.    Punitive Damages

2        Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a

3    preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009).  The

4    jury must find that Defendants' conduct was "motivated by evil motive or intent, or . . . involves reckless

5    or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56

6    (1986); Larez v. Holcomb, 16 F.3d 1513, 1518 (9th Cir. 1994).

7    3.    Qualified Immunity

8        Qualified immunity protects government officials from "liability for civil damages insofar as

9    their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

10   person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The doctrine of qualified

11   immunity "balances two important interests – the need to hold public officials accountable when they

12   exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

13   when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815

14   (2009).

15       Determining whether an official is entitled to qualified immunity requires a two-part analysis.

16   Saucier v. Katz, 533 U.S. 194, 201 (2001).  First, a court must decide whether the facts alleged, when

17   taken in the light most favorable to the plaintiff, show that the official's conduct violated a statutory or

18   constitutional right.  Id.  Second, the court must determine whether the statutory or constitutional right

19   was "clearly established."  Id.  A right is "clearly established" in the context of qualified immunity if "it

20   would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted'

21   . . . or whether the state of the law [at the time of the violation] gave 'fair warning' to the official[] that

22   [his] conduct was unconstitutional."  Clement, 298 F.3d at 906 (quoting Saucier, 533 U.S. at 202).

23       Although it is often beneficial to address the two-party inquiry in the sequence outlined above,

24   it is not mandatory.  Pearson, 129 S. Ct. at 818.  A court has "discretion in deciding which of the two

25   prongs of the qualified immunity analysis should be addressed first."  Id.  A court may grant qualified

26   immunity and dismiss a plaintiff's claims at any point the court answers either prong in the negative.

27   See, e.g., Tibbetts v. Kulongoski, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassing the first prong and

28   granting the defendants qualified immunity because the plaintiff's due process claim was not a clearly

1   established right at the time of the alleged violation).

2          4.     Eleventh Amendment Immunity

3          In the absence of consent, the Eleventh Amendment prohibits suits in which the State or one of

4   its agencies or departments in named as a defendant.  Pennhurst State School & Hosp. V. Halderman,

5   465 U.S. 89, 101 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  State officials sued in their

6   official capacity are not persons for purposes of § 1983 liability. Rather a suit against the official in his

7   or her official capacity is a suit against the State itself. Will v. Michigan Department of State Police, 491

8   U.S. 58, 71 (1989).

9   **I.     ABANDONED ISSUES**

10         None.

11  **J.     WITNESSES**

12         The following is a list of witnesses that the parties expect to call at trial, including rebuttal and

13  impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY

14  BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS

15  ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e);

16  Local Rule 281(b)(10).

17         Plaintiff anticipates calling the following witnesses at trial:

18         1.     Defendant Fernando Gonzales

19         2.     Dr. John Ponder[2, 3]

20         3.     Kevin Hunt (K-83503)

21         4.     Ryan Earle (P-75405)

22         5.     James Allen (G-09835)

23  _____

24         [2] In his "Motion for Attendance of Unincarcerated Witnesses," filed the same day as his amended pretrial statement, Plaintiff indicated that he did not intend to subpoena Dr. Ponder because he could not afford the witness fees. Then, in his amended pretrial statement, he indicates that Dr. Ponder has waived his fees.

25

26         [3] Plaintiff indicates in his pretrial statement that Dr. Ponder has waived his fees.  However, **as the Court indicated in its August 2, 2011 order (Doc. 63 at 1-2),** if Plaintiff seeks a subpoena to be issued to Dr. Ponder, he **must** comply with the requirements of the Second Scheduling Order and **must** provide a money order, payable to Dr. Ponder for the full amount

27  of the witness fees and travel expenses, which the Court estimates is $199.61.  Dr. Ponder may choose to refuse this payment when he is served.  The Court will not order Dr. Ponder served unless this amount is submitted.

28         Alternatively, Plaintiff may secure Dr. Ponder's voluntary attendance at trial without subpoena.  Plaintiff is advised to refer to the Court's "Second Scheduling Order."

6.     David Baumgartel (P-46291)

7.     Pete Jaurigue (K-71887)

8.     J. Gomez (J-40289)

9.     Anthony Gonzales (H-93467)

10.    Ralph Sierra (C-57969)

11.    Manuel Castanon (T-15633)

12.    Arellano Everardo (K-85051)

13.    Michael Blondino (V-93559)

14.    Charles Sherwin (V-15055)

15.    Lee Simpson (F-46364)

16.    Tyler Farmer (J-87659)

Defendant anticipates calling the following witnesses at trial:

a.     Fernando Gonzalez

b.     John Bartelmie

c.     T. Steadman

d.     Custodian of Goolsby's central file

e.     Custodian of Goolsby's medical records

f.     Dr. Felix Ibinosa

The parties stipulated on the record that Plaintiff's central file and medical records held by the CDCR may be introduced by either party, without testimony by a custodian of records.

**K.     EXHIBITS**

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

Plaintiff anticipates offering the following exhibits at trial:

1.     Drawing of an (IEM) cage

2.     Plaintiff's Central File

3.      Declaration from each Incarcerated Inmate

4.      Plaintiff's Inmate Appeal dated March 26, 2008

5.      Plaintiff's Inmate Appeal dated April 29, 2009

6.      Regulation requiring Ape's to be given a minimum of 100 sq feet of space for every 100 lbs it weighs

7.      California Code of Regulations, Title 15

8.      CDCR Logbooks

9.      Plaintiff's personal yard logs

10.     Declaration of Associate Warden M. Bryant

11.     Yard schedule

Defendant anticipates offering the following exhibits at trial:

a.      Abstracts of judgment for felony convictions of Goolsby.

b.      CDCR Chronological History of Goolsby.

c.      Incident reports, program status reports from CCI and documents relating to modified programming for the relevant time period.

d.      Disciplinary documents pertaining to Goolsby, including Rules Violation Reports, Crime Incident Reports, and related documentation.

e.      Goolsby's classification documents and related documents regarding housing assignments and programming, including CDCR 128g classification chronos.

f.      Daily activity documentation for the relevant time period, including CDCR 114a Inmate Segregation records for Goolsby and pertinent logbook entries.

g.      Goolsby's medical records pertaining to injury claims from June 2007 to present.

On or before **October 3, 2011**, each party shall provide the other with a copy of any exhibit not previously produced during discovery.  In addition, the original and four copies of all trial exhibits, along with exhibit lists, shall be submitted to the Courtroom Deputy no later than **October 31, 2012**.[4] Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with

---

[4] Original for the Courtroom Deputy, one copy for the Court, one copy for the court reporter, one copy for the witness stand and one to retain for themselves.

1 (e.g., PX-1, PX-2, etc.).  Defendants' exhibits shall be pre-marked with the prefix "DX" and lettered sequentially beginning with 500 (e.g., DX-500, DX-501, etc.).

The parties SHALL number each page of any exhibit exceeding one page in length.

**L.    DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial.  NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

Plaintiff anticipates offering the following discovery documents at trial:

1.    Defendant's Interrogatory responses

2.    Defendant's production of documents responses

Defendant does not anticipate offering any discovery documents at trial.

**M.    FURTHER DISCOVERY AND MOTIONS**

Discovery closed in this action on November 16, 2009.

Ms. Ramsey alerted the Court that if the matter does not settle, it will be reassigned to a new Deputy Attorney General.  In that event, it is likely the newly assigned attorney will seek a continuance of the trial for no more than 30 days.  If such a motion will be made, it SHALL be made as soon as practicable and should seek a continuance for no more time than absolutely necessary.

Any party may file motions in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n.4 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997).  The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  Id.

All motions in limine must be served on the other party, and filed with the Court, by **October 24, 2011**. The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court, by **November 7, 2011**. The Court will decide all motions in limine upon the written submissions. The parties are reminded that they may still object to the introduction of evidence during trial.

**N.      STIPULATIONS**

The parties have not agreed upon any stipulations at this time.

**O.      AMENDMENTS / DISMISSALS**

None at this time

**P.      SETTLEMENT NEGOTIATIONS**

The parties will undergo a mediation with Magistrate Judge Kellison on November 3, 2011.

**Q.      AGREED STATEMENTS**

None.

**R.      SEPARATE TRIAL OF ISSUES**

As is this Court's standard practice, the Court will bifurcate the issue of punitive damages. If the jury finds that the Defendant is liable for punitive damages, the Court will conduct a second phase of trial on the amount of punitive damages.

**S.      EXPERTS**

The Court finds it unnecessary to appoint an impartial expert witness or limit the number of expert witnesses in this case.

**T.      ATTORNEY'S FEES**

Plaintiff is proceeding pro se and has not incurred any attorney's fees. Defendants anticipate seeking attorney's fees if they prevails.

**U.      TRIAL DATE / ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **November 21, 2012, at 9:00 a.m.** before the Honorable Jennifer L. Thurston in Courtroom 6, 7th Floor, United States Courthouse, 2500 Tulare Street, Fresno, California. Trial is expected to last no longer than two days.

# V.      TRIAL PREPARATION AND SUBMISSIONS

///

### 1.      Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file trial briefs.  If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **October 31, 2011.**

### 2.      Jury Voir Dire

The parties are required to file their proposed voir dire questions,  in accordance with Local Rule 162.1, on or before **October 31, 2011.**

### 3.      Statement of the Case

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **October 31, 2011.**  The Court will consider the parties' statements but, as necessary, will draft its own statement.  The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

### 4.      Jury Instructions

Defendants shall file proposed jury instructions as provided in Local Rule 163 on or before **October 31, 2011.** If Plaintiff also wishes to file proposed jury instructions or object to those proposed by Defendants, he must do so on or before **November 7, 2011.**

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible.  All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction.  One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition.  Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at jltorders@caed.uscourts.gov.  If Plaintiff elects to file any proposed jury instructions, he may file those, as normal, under this case number with the Clerk of the Court.

13

5.      Verdict Form

Defendants shall file a proposed verdict form as provided in Local Rule 163 on or before **October 31, 2011.** If Plaintiff also wishes to file a proposed verdict form or object to the one filed by Defendants, he must do so on or before **November 7, 2011.**

**W.      OBJECTIONS TO PRETRIAL ORDER**

Any party may, within ten (10) days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order.  Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.      COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.


IT IS SO ORDERED.

Dated:   **September 27, 2011**                              **/s/ Jennifer L. Thurston**

UNITED STATES MAGISTRATE JUDGE